SLIP OPINION

2015 Ark. App. 564

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-15-497

| | |
|---|---|
| EMERSON GREGRICH and JAMIE GREGRICH | Opinion Delivered October 7, 2015 |
| APPELLANTS | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. JV-2014-77] |
| V. | |
| | HONORABLE THOMAS SMITH, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES | |
| APPELLEE | AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellants Emerson and Jamie Gregrich appeal from an order of the Benton County Circuit Court terminating their parental rights. On appeal, appellants' sole contention is that the circuit court abused its discretion in denying their request to continue the termination hearing until after the circuit court held a hearing on whether the juveniles would be placed with the paternal grandmother, Pamela Gregrich. We affirm.

The Arkansas Department of Human Services (DHS) filed a petition and an amended petition for emergency custody and dependency-neglect of A.G. and K.G. on January 27, 2014. In the affidavit attached to the amended petition, DHS stated that a report was made that K.G. was left unattended at home while Emerson and Jamie left to "shoot up meth." In a subsequent investigation, Emerson and Jamie admitted to using drugs, and a seventy-two-hour hold was placed over the children on January 24, 2014. The circuit court granted the petition on January 27, 2014, finding that probable cause existed for the removal, and the

court appointed an attorney ad litem for the children. Subsequently, the circuit court filed a probable-cause order on January 28, 2014. An adjudication hearing was set for February 25, 2014.

After the adjudication hearing, the circuit court found by a preponderance of the evidence that the children were dependent-neglected based on the stipulation of the parties and noted that there was "inadequate supervision by both parents due to substance abuse." At that time, the goal was set as reunification. Additionally, the parents were ordered to complete marriage counseling in addition to the other case plan services in a May 20, 2014 review order. After an August 12, 2014 review hearing, the circuit court found that Jamie was only partially in compliance with the case plan and that Emerson was not in compliance with the case plan.

On August 5, 2014, Pamela Gregrich, the children's paternal grandmother, filed a petition to intervene and a petition for adoption. She subsequently filed a petition for placement on August 14, 2014, alleging that DHS denied her placement, that she requested a hearing to determine placement of the children, and that she had filed a petition for adoption because she was denied placement. On behalf of the children, the attorney ad litem filed a response on September 2, 2014, alleging that the petition to intervene was premature because parental rights had not been terminated. Furthermore, the attorney ad litem alleged that Pamela would need to either obtain DHS's consent or show that DHS was unreasonably withholding its consent in order to prevail on her petition to adopt, and DHS could not grant such consent until after the parental rights had been terminated. DHS filed a response that

2

also objected to Pamela's petition to intervene and petition for placement.

The circuit court changed the goal from reunification to adoption in an October 14, 2014 permanency-planning order. The circuit court found that neither parent was in compliance and ordered the parents to submit to a drug test and provide any documentation of their progress. DHS filed its formal petition for termination of parental rights on November 14, 2014. DHS alleged five separate grounds for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2013): (1) that the juveniles had been adjudicated by the court to be dependent-neglected and have continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent; (2) that the juveniles had lived outside the home for a period of twelve (12) months, and the parent had willfully failed to provide significant material support in accordance with the parent's means or maintained meaningful contact with the juveniles; (3) that the parent had abandoned the juveniles; (4) that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juveniles in the custody of the parent is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juveniles in the custody of the parent; and (5) that the parent had subjected the juveniles to aggravated circumstances. Subsequently, the circuit court granted Pamela's petition to intervene as a

3

party and scheduled a termination hearing and placement hearing for February 10, 2015.

At the hearing, appellants requested the circuit court to continue the termination hearing until after the placement hearing, which was scheduled the same day. Appellants reasoned that if the circuit court would grant Pamela's motions, then they would both sign a consent. Although counsel did not provide a specific case cite at the time, Jamie's attorney alluded to this court's reversal of the circuit court's denial of a motion for continuance in *Rhine v. Arkansas Department of Human Services*, 101 Ark. App. 370, 278 S.W.3d 118 (2008). DHS and the attorney ad litem argued that the termination hearing should be held first because there would be no need for a placement hearing or adoption until after the termination of parental rights. Additionally, DHS noted that appellants were essentially asking the circuit court for an advisory opinion.

After a lengthy discussion, the circuit court denied appellants' motion for a continuance. In its discussion and oral ruling, the circuit court explained that it had already protected Pamela's interest by allowing her to intervene. The circuit court also expressed its concern that appellants were asking for an advisory opinion and that it did not want to give them "false hope" because the issue of placement was only one step. The issue of adoption and the "question of whether or not DHS [was] unreasonably withholding consent" to Pamela's petition for adoption would still be at issue. Furthermore, the circuit court explained that it did not want to move the children back and forth but wanted to address the issues of whether Pamela would be appropriate for placement and adoption after the termination.

I have never agreed to remove these kids until it was going to be final as to who was going to adopt these kids.

4

Because, it's been my understanding, they're either going to be adopted by the home that they're in, or I'm going to place them with grandma and let her do the adoption. That's where this whole thing has been heading.

And I know that's what I told grandma last time. When I said I'd let you intervene and come in and look. I had to protect your rights. But [DHS is] still the custodian, and they still have the right to consent, or not consent.

And I'm going to have to prove that they're -- if they're never going to consent, no matter what I say about grandma's placement, it's going be factors of whether or not they're unreasonably withholding it. That's the whole issue in this case. That's what it will boil down to.

So that's kind of where we're at. I do not know how we can do this any other way.

I think I've been more than fair with these parents to make sure that they know that they're going to have a grandmother in the fight on the adoption; and that's really all I can do. But I'm only doing it once.

At the termination hearing, both parents testified that they were incarcerated and had a history of drug abuse. Additionally, testimony was introduced to show that the children were adoptable, that the children would potentially be harmed if returned to the parents, and that the termination was in the best interest of the children. The circuit court filed an order terminating parental rights on March 10, 2015, finding that DHS had proved by clear and convincing evidence that four out of the five alleged statutory grounds existed.[1] Additionally, the circuit court found that it was in the best interest of the children to terminate Emerson's and Jamie's parental rights, considering the likelihood that the children would be adopted and the potential harm to the children's health and safety if returned to the parents' custody. As such, the circuit court terminated both parents' parental rights. This appeal followed.

Appellants do not contest the sufficiency of the evidence supporting the circuit court's

---

[1] The circuit court did not find that DHS had proved the third statutory ground alleged in its petition—that the parents had abandoned the juveniles.

decision to terminate their parental rights. Instead, they contend that the circuit court abused its discretion in denying their request to continue the termination hearing until after the circuit court held a hearing on whether the juveniles would be placed with the paternal grandmother. In a joint responsive brief, DHS and the attorney ad litem disagree.[2]

It is well settled that the granting or denial of a motion for continuance is within the sound discretion of the circuit court, and the circuit court's decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Renfro v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 419, 385 S.W.3d 285. An abuse of discretion occurs when a court acts improvidently and without due consideration. *Jordan v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 592. Additionally, the appellant must show prejudice from the denial of a motion for continuance. *Renfro, supra.*

Appellants suggest that this court's decision in *Rhine, supra*, is controlling. In *Rhine*, this court held that a circuit court abused its discretion when it denied a mother's motion for continuance to allow her to execute a consent and waiver so that her mother could adopt her child. *Id.* There, a continuance would have accomplished a quicker permanency for the child than if the court proceeded with an ordinary termination case because the rights of the father would still had to have been terminated at a later date. *Id.* However, the circuit court denied

---

[2] Appellees also allege that appellants failed to preserve their argument because they did not specifically make a "motion for a continuance." However, we note that although counsel for appellants did not use the specific word "continuance," they clearly requested the court to hold a hearing on the grandmother's motion before holding a hearing on the termination of parental rights. Therefore, appellants' argument is preserved for purposes of this appeal.

the motion for continuance after it considered that the attorney for DHS would be on vacation, that there was an upcoming training, and that, if a continuance was granted, the termination hearing would go beyond the ninety-day time limit established by Arkansas Code Annotated section 9-27-341(d). *Id.* This court explained that the circuit court failed to exercise its discretion under section 9-27-341(d) to go beyond the ninety-day limit upon a finding of good cause even after the attorneys had brought the exception to the court's attention. *Id.* Therefore, under those circumstances, we held that the circuit court abused its discretion in denying Rhine's motion for a continuance. *Id.*

The facts of this case, however, are more akin to *Jordan v. Arkansas Department of Human Servs.*, 2011 Ark. App. 592. Jordan requested a continuance to consider the possibility that she might consent to the termination of her parental rights. *Id.* She also appeared to condition her consent on the outcome of the hearing, asking the court to consider her consent if it was inclined to terminate her parental rights. *Id.* This court held that under those circumstances, there was no abuse of discretion as the court did not act improvidently in going forward with a decision based on the evidence at the termination hearing. *Id.* As in *Jordan*, appellants moved for a continuance and announced that they were considering whether to consent to the termination on the condition that the court would ultimately grant Pamela custody and allow her to adopt the children. Furthermore, the circuit court thoroughly discussed and considered the motion at the hearing. As such, we cannot say that the trial court abused its discretion as the court did not act improvidently or without due consideration in going forward with a decision based on the evidence presented at the

termination hearing, and we affirm.

Affirmed.

GLADWIN, C.J., and WHITEAKER, J., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, Dependency-Neglect Appellate Division, for appellants.

*Mischa K. Martin*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.